# ARNOLD *v.* CARTER.

---

PRACTICE; APPELLATE PRACTICE; PARTITION; TRUSTEES; COUNSEL FEES.

1. Upon a hearing upon a petition for a rule to show cause, a rule issued as prayed' and an answer thereto, the facts alleged in the answer must be taken as true, the result being the same as though a demurrer had been filed to the answer.
2. While a trustee appointed in a partition suit to make sale has no right, as such, to appeal from any order passed in the cause, not being a party to the suit but merely an officer of the court, yet if by any proceeding in the cause he is subjected to the jurisdiction of the court and made liable by any decree therein rendered, he

will thereupon occupy the position of a party to the suit, and be entitled to an appeal from such decree; *distinguishing* Bohrer v. Otterback, 2 App. D. C. 78, and Hallam v. Oppenheimer, 3 App. D. C. 329.

3. Where an order of sale in a partition suit directs the trustee to pay the taxes and assessments against the property to the date of sale, the trustee should not pay taxes accruing after the day of sale, without obtaining an additional order from the court, or the consent of all the distributees of the fund; the taxes accruing after the day of sale, being *prima facie* chargeable to the purchaser at the sale, whose title relates back to the time of his purchase.

4. A solicitor who performs services in a partition suit for some of the parties under an express or implied contract with them for his fees, has a lien for his fees upon their distributive shares of the proceeds of sale, and if such proceeds are paid into court he is entitled to an order of payment therefrom, if necessary.

5. Where the solicitor for some of the parties to a partition suit is himself appointed trustee to make sale, and as such trustee receives the proceeds of the sale made by him, he should not be allowed to retain any portion of such fund on account of his claim for fees as solicitor, but should pay the entire fund into the registry of the court, and then make his claim.

No. 1127. Submitted November 15, 1901. Decided January 7, 1902.

HEARING on an appeal by a trustee in a partition suit from a decree of the Supreme Court of the District of Columbia requiring payment by him to certain parties to such suit of their distributive shares of a fund realized from the sale of the property involved, as shown by the report of the auditor, to pay costs, etc. · *Reversed.*

The COURT in its opinion stated the case as follows:

This case has the following history: On April 3, 1896, Eugene F. Arnold, a member of the bar of the Supreme Court of the District of Columbia, residing in said District, filed a bill in said court on behalf of Alice Carter and her husband James Carter, Henrietta Marshall, William H. Marshall and his wife Julia Marshall, complainants, against Hattie Williams and Benjamin C. Marshall, to obtain partition of a lot in the city of Washington. It was alleged that

the property was not susceptible of partition, without loss to the parties interested as tenants in common, and a decree for sale and distribution was prayed. The bill appears in the record as signed by Alice Carter, William H. Marshall, and Henrietta Marshall and as sworn to by the two first signers.

Defendants having been served with process, the cause proceeded to decree on June 19, 1897, ordering sale. Eugene F. Arnold was appointed trustee to make the sale, under a bond for $5,000.

He was authorized to pay taxes and assessments against the property to the day of sale, for which credit was to be given in his account.

June 30, 1899, the property was sold and purchased by William H. Marshall and Benjamin C. Marshall for the sum of $2,100, with the understanding that it was to be cleared of taxes to said date.

The sale was reported July 19, 1899, and a conditional order of ratification passed July 26, 1899. The report was in accordance with the promise of the purchasers to pay all cash before final confirmation.

On April 16, 1901, an order was entered by consent of Ben. C. Marshall, William H. Marshall and Hattie Williams, represented by attorneys Bundy and Walker, and by Alice Carter and Henrietta Marshall, represented by attorney L. Cabell Williamson, confirming the report of sale; and reference was made to the auditor to state the trustee's account and report the proportions of the distributees.

The auditor's report was made May 1, 1901, showing a balance of $1,584.75, distributable among William H. Marshall, Benjamin C. Marshall, Henrietta Marshall, Alice Carter and Hattie Williams, in equal shares, namely, $316.95 each.

This report was confirmed June 13, 1901, on motion of L. Cabell Williamson, Esq., and the trustee, Arnold, was ordered to pay over to him, as solicitor for Alice Carter and Henrietta Marshall the said sums apportioned to them. On July 11, 1901, said parties, through the same counsel,

filed a sworn petition setting out the proceedings aforesaid and the refusal of the trustee to pay over the money and praying for a rule against him.

In this petition they say, that the reason assigned by said trustee for his refusal is that he claims fees due him by petitioners as their solicitor in said partition suit. And they allege that they never employed said Arnold as their attorney or solicitor, never authorized him to act for them, and never knew that he claimed to act for them until the demand of fees as aforesaid. They further say that they did not sign, or swear to, the said bill, and did not want the property sold.

The rule to show cause was entered and the trustee Arnold filed an answer thereto under oath.

This answer contains a lengthy history of the proceedings in the cause and is accompanied by many exhibits consisting in part of letters written him by Henrietta Marshall concerning said partition suit during its progress. It alleges substantially —

(1) That the order of ratification of the auditor's report was entered without notice to him or his knowledge, though he was the only attorney of record for any of the parties; and he did not become aware of the same until July 19, 1901 (at which date he was served with the rule aforesaid). The purchase money was not in fact paid until May 3, 1901.

(2) That he has always been ready and willing to pay petitioners the sums coming to them, less their proportions of a few dollars of costs due the clerk and of a certain bill for taxes not included in the auditor's report. (It appears by an exhibit that said taxes and penalty on redemption were stated May 3, 1901, by the District collector and amounted in all to $43.23, and were paid by the said Arnold.) And that he is now ready to pay the same and has often so notified the attorney for the petitioners, who has refused to receive any less sum than the whole.

(3) That the payments due said parties are subject to the deduction of $8.65 each on account of said taxes, as well as the fees aforesaid of $25 each. And that the purchase

money had not been paid to him until after the auditor's report, namely, May 3, 1901, and would not then have been paid without the settlement of said taxes because the party advancing the money to the purchaser made that condition.

(4) That the said Alice Carter and Henrietta Marshall did consult respondent and retain him as their solicitor to bring said suit, did sign the bill and were cognizant of all the proceedings in the case. A lengthy and particular statement is made of the circumstances surrounding the relations of the parties, the institution of the suit and so forth, with references to letters and memoranda that are set out and then given in full as exhibits. The bill for partition was filed April 3, 1896, and the letters of Henrietta Marshall begin with one from her at Wilmington, Del., on March 18, 1896, to her sister, Mrs. Carter, referring to the house. The next is from her to Arnold, April 26, 1896, inquiring of the business he had on hand for them, and also referring to former business matters.

Another exhibit is an agreement signed by all the parties, including Henrietta Marshall, who signs first, and Alice Carter, directing said Arnold, as trustee, to pay off a certain tax incumbrance out of the purchase money of said lot. This instrument bears date May 1, 1900.

No answer was filed to this return to the rule to show cause, and on July 22, 1901, a decree was entered " on consideration of the petition and the rule to show cause and the answer thereto," directing said Arnold to at once pay to said parties the said sums originally apportioned to them, and to pay to said L. Cabell Williamson any costs by him expended in the proceedings, and also the costs of court.

From this decree the said Arnold has appealed.

*Mr. Irving Williamson* for the appellant.

*Mr. L. Cabell Williamson* for the appellees:

1. The appellant, Eugene F. Arnold, trustee, not being a party to the record, has no right to take an appeal. He

is not a purchaser, nor an intervenor. He is simply and only the trustee, appointed by the decree of the court to sell the real estate, and distribute the proceeds, under the direction and order of the court. *Hallam* v. *Oppenheimer,* 3 App. D. C. 329.

2. It is asserted on the oaths of Alice Carter and Henrietta Marshall that Eugene F. Arnold was never employed by them, or either of them, as their solicitor or attorney, in respect to the property or any proceeding for its sale, and while this is denied by Eugene F. Arnold in his answer to the rule to show cause why he should not pay over the money, etc., yet the answer was filed on the very day of the hearing, and no opportunity was ever given to controvert its statements or to explain the exhibits filed with said answer. As the answer presented a question of fact, to be first determined in favor of said Arnold before he could assert any claim on account of solicitor's fees, the court properly passed an order requiring him to discharge his duty as trustee, by paying over the money to the parties entitled thereto.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. Though quite elaborate, the answer of the respondent to the rule to show cause was, in its essential features, responsive to the allegations of the petition on which the rule had been entered. There was no replication to the answer, and no denial, in any form, of the specific facts therein alleged.

The hearing, as we have seen, was upon the petition and answer; consequently, for the purposes of this determination the facts of the answer must be taken as true. The result is practically the same as if a demurrer to the answer had been sustained.

2. A preliminary question arises on the suggestion of the appellees that the respondent, not having been a party to the suit out of which this proceeding grew, has no right to appeal from the order entered against him. This sugges-

tion — substantially a motion to dismiss — is founded on a decision of this court dismissing the appeal of trustees, for the sale of property under a decree, from an order setting aside the sale reported by them. *Hallam* v. *Oppenheimer,* 3 App. D. C. 329. That decision is not in point. The trustees were officers of the court appointed to make a sale; to perform a duty with which the court was charged. The real parties at interest entered no objection and took no appeal. The order did not affect the trustees in any respect.

Nor is there any analogy between the present appeal and that of *Bohrer* v. *Otterback,* 2 App. D. C. 78; for that was a case where an attorney, having a claim against one of the parties arising·out of a different proceeding, intervened and asked to have payment made thereof, as part of the costs, out of a fund under the control of the court, " apparently neither created nor preserved for a common benefit by the efforts of the petitioner or of the client whom he represents."

The appellant here would have no right to appeal from the decree of sale, nor from the order confirming the same; but by the subsequent proceeding he has been subjected to the jurisdiction of the court and made liable by decree therein rendered. " He has, therefore, the corresponding right to contend against all claims made against him. For this purpose he occupies the position of a party to the suit, although an officer of the court, and after the final decree below has the right to his appeal here." *Hinckly* v. *Gilman, etc., RR. Co.,* 94 U. S. 467, 469; *Blossom* v. *Railroad Co.,* 1 Wall. 655; *Williams* v. *Morgan,* 111 U. S. 684, 699.

3. From the facts alleged in the answer and supported by the exhibits thereto attached, we must assume that the respondent was retained to bring the suit for partition in the name, not only, of William H. Marshall, but also of Alice Carter and Henrietta Marshall, the appellees.

Moreover, it is manifest, by their own proceedings set· forth in the record, that they were, at least, cognizant of the depending suit. And despite their allegation " that they did not want the property sold, and if there had been any way known to them to prevent said sale they would have

done so," they appeared in the cause on April 16, 1901, by other counsel, and joined with the other parties in a consent decree confirming the report of sale, and directing the auditor to state the account and the scheme of distribution of the net proceeds.

Up to the date of that decree it seems that the respondent was the only attorney of record for any of the parties. He was not notified of this order of final ratification of the sale, nor was he of the reference to the auditor, and the confirmation of his report when subsequently made.

It seems, also, though it is not made clear, that the conditional order of ratification of the sale, that is referred to but not set out in the record, was for the purpose of giving the purchasers — themselves parties at interest — the opportunity to raise the money to pay their bid in cash, instead of part cash, as provided in the decree of sale.

The delay in concluding the sale was very great and is not explained; but the record also fails to show any action taken by the distributees of the fund towards despatch therein until the consent order of April 16, 1901, before referred to. It appears from the respondent's answer that the cash was not actually paid to him by the purchasers until May 3, 1901 — three days after the confirmation of the auditor's report. It appears, also, that, in addition to the taxes ordered paid in the decree of sale, he paid other taxes — not included in the auditor's report — without which payment the parties lending the money to the purchasers to pay for the property would not pay over the same.

It is the proportion of this payment, and of the fee of the respondent as attorney, due by the appellees, that the respondent, as trustee, seeks to retain from the fund in his hands.

In respect of the taxes paid, it does not certainly appear that they were within the terms of the order of sale which directed the payment by the trustee of "all taxes and assessments against the said property, if any, to the day of sale."

To protect himself in that payment, if [of] a tax later than the date aforesaid, he should have applied to the court for

an additional order, or at least have procured the consent of all the distributees of the fund.

If the payment was for taxes accruing before the day of sale, the respondent should have credit for the same in final settlement; if not, then, *prima facie,* they are chargeable to the purchasers whose title relates back to the time of their purchase. Inquiry into these matters, on behalf of the trustee, ought not to be precluded by the order of reference to the auditor or that confirming his report, of which he had no notice, and for want of notice, no opportunity to be heard.

The respondent's claim of lien upon the fund for his fees presents a distinct question.

So far as the record and his answer disclose, he was the sole attorney of record in the cause until the entry of the order of April 16, 1901.

Assuming that he performed services for the appellees, as their solicitor, under an express or implied contract, he would have a lien upon the shares of the fund coming to them, had the same come into his possession as their attorney solely. And if the fund had been paid into court, he ought, as the attorney by whose efforts that fund had been created, to be entitled to an order of payment therefrom, if necessary to his complete protection.

But the fund came into his hands as the trustee appointed by the court, and, less such sums as may have been paid out by virtue of previous orders, was subject to the disposition of the court.

In responding to the rule he would better have paid the entire sum in his hand into the court, and then have asked the court for an allowance therefrom on account of additional taxes paid and his fees as solicitor.

It would be a bad practice to permit trustees, appointed for such purposes, to retain any portion of the fund in their hands on account of claims, no matter how meritorious they might be, that have their origin in another and distinct relation with the distributees.

The court was right, therefore, to the extent that it refused to make the allowance as claimed in the answer and limit the order of payment to the sum in hand after deducting the amount of the allowances.

But as the answer disclosed the grounds of the respondent's claim for reimbursement and allowance, we are of opinion that the proper order would have been to pay the entire fund into court with leave to all parties for further hearing in respect of the matters of difference between them.

For these reasons the order appealed from will be reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.    It is so ordered.

*Reversed.*